UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 16-CV-756 (JFB) (SIL)

———————————

LOCAL 210 WAREHOUSE & PRODUCTION EMPLOYEES UNION, AFL-CIO, TRUSTEES OF THE LOCAL 210 UNITY PENSION FUND, AND TRUSTEES OF THE LOCAL 210 UNITY WELFARE FUND,

Plaintiffs,

VERSUS

ENVIRONMENTAL SERVICES, INC.,

Defendants.

———————————

**MEMORANDUM AND ORDER**
November 22, 2016

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiffs, Local 210 Warehouse & Production Employees Union, AFL-CIO (the "Union"), Trustees of the Local 210 Unity Pension Fund, and Trustees of the Local 210 Unity Welfare Fund (collectively, the "Funds"), brought this action seeking vacatur of arbitrator Randi Lowitt's ruling, which closed the Union's arbitration proceeding against defendant Environmental Services, Inc. ("ESI") on the grounds of delay. (*See* Declaration of Glenn B. Gruder, Ex. F at 12–14 [hereinafter "Ruling"].) ESI filed a counterclaim seeking confirmation of the arbitrator's award. Both parties submitted declarations and exhibits and have moved for summary judgment against the other. For the reasons set forth below, plaintiffs' request for vacatur of the arbitrator's award (and their accompanying motion for summary judgment) is denied, and the Court grants ESI's motion for summary judgment and confirms the award issued in the arbitration proceeding.

I. BACKGROUND

A. Facts

The following facts are taken from the parties' declarations, exhibits, and respective Local Rule 56.1 statements. Unless otherwise noted, where a party's Rule 56.1 statement is cited, that fact is undisputed, or the opposing party has not pointed to any evidence in the record to contradict it.

The Union entered into a collective bargaining agreement ("CBA") with ESI on January 1, 2007. (Pls.' 56.1 ¶ 1; Def.'s 56.1 ¶ 2.) The CBA obligates ESI to collect Union membership dues on behalf of the Union and to periodically contribute to the Funds. (Pls.'

56.1 ¶¶ 9–10; Declaration of Andrew J. Turro [hereinafter "Turro Dec."], Ex. 5, ¶¶ 4, 22, 23.) It further requires the parties to submit any disputes over the CBA to binding arbitration. (*See* Pls.' 56.1 ¶ 13; Turro Dec., Ex. 5, ¶ 6.) Specifically, the CBA provides as follows:

> The New York State Employment Relations Board shall upon request of either party hereto designate the Arbitrator who shall conduct a hearing in such manner as he shall consider proper, and shall serve as sole Arbitrator of the dispute between the parties. The Arbitrator shall have the right to conduct an ex parte hearing in the event of the failure of either party to be present at the time and place designated for the arbitration, and shall have the power to render a decision on the testimony before him at such hearing. The decision of the Arbitrator shall be final and binding upon both parties and may be entered as a final decree or judgment in the Supreme Court of the State of New York.
>
> The costs of arbitration, including the Arbitrator's fee, shall be borne equally by the EMPLOYER and the UNION. It is the intent of the parties hereto that all disputes between them, both within and outside this Agreement, shall be submitted to arbitration and that no technical defense to prevent the holding of the arbitration shall be permitted.

(Turro Dec., Ex. 5, ¶ 6.)

In 2010, disputes arose between the parties over ESI's obligations to make contributions to the Funds and to collect membership dues. (Pls.' 56.1 ¶ 14; Def.'s 56.1 ¶ 3.) Plaintiffs brought suit against ESI in the Eastern District of New York in December 2010, but that litigation was discontinued with prejudice pursuant to a stipulation dated October 25, 2011. (Pls.' 56.1 ¶¶ 14–15; Def.'s 56.1 ¶¶ 4–5). The stipulation provided that the parties agreed to submit their dispute to arbitration before the New York State Employment Relations Board, the responsibilities of which had been assumed by the Public Employment Relations Board ("PERB"). (Pls.' 56.1 ¶ 17; Def.'s 56.1 ¶ 6.)

The PERB designated Randi Lowitt as arbitrator of the dispute and notified the parties of her designation in January 2012. (Pls.' 56.1 ¶ 18; Def.'s 56.1 ¶ 8.) In March, she scheduled a hearing for August 1, 2012. (Pls.' 56.1 ¶ 19; Def.'s 56.1 ¶ 9; Ruling at 3.) On the plaintiffs' request and with ESI's consent, the arbitrator rescheduled that hearing to November 1, 2012. (Pls.' 56.1 ¶¶ 21, 23; Def.'s 56.1 ¶ 10; Ruling at 3.) Later, on ESI's request, the arbitrator adjourned the November 1 hearing without setting a new date. (Pls.' 56.1 ¶¶ 21, 23; Def.'s 56.1 ¶ 10; Ruling at 3.)

The arbitrator set a new hearing date on March 25, 2013, scheduling it to take place on October 24 and 30, 2013. (Pls.' 56.1 ¶ 37; Def.'s 56.1 ¶ 16; Ruling at 4.) On April 15, she denied the plaintiffs' request to have the hearing advanced to an earlier date. (Pls.' 56.1 ¶¶ 40–41.) In September 2013, the plaintiffs asked the arbitrator to adjourn the October 24 hearing date while keeping the October 30 date on the calendar. (Pls.' 56.1 ¶ 43; Def.'s 56.1 ¶¶ 17–18; Ruling at 5.) ESI consented to the request, and the arbitrator granted it. (Pls.' 56.1 ¶ 44; Ruling at 5.) On October 18, the parties agreed to a further adjournment of the October 30 hearing, which the arbitrator granted without setting a new date. (Pls.' 56.1 ¶¶ 45–46; Def.'s 56.1 ¶ 19; Ruling at 5.)

2

Between October 18, 2013 and September 2014, the arbitrator sent the parties several emails inquiring about the status of the case and new hearing dates. (*See* Pls. 56.1 ¶¶ 46–60; Def.'s 56.1 ¶ 20; Ruling at 5–7.) The arbitrator found that the parties did not respond to her inquiries on five occasions. (Ruling at 5–6.) On other occasions, they would give her status updates, (Pls.' 56.1 ¶¶ 50–51, 54–56, 66), but only once did the plaintiffs ask about rescheduling the hearing. (*Id.* at ¶¶ 59–61; Ruling at 6.) Specifically, in March and early April 2014, the plaintiffs asked about "open dates" for a hearing, but the arbitrator informed them that the earliest time for a hearing was September. (Pls.' 56.1 ¶¶ 59–61; Ruling at 6.) No hearing date was set at that time. (*See* Pls.' 56.1 ¶ 61; Ruling at 6.) The arbitrator made further inquiries about scheduling in late April, May, and August 2014, but no hearing was ever scheduled. (Ruling at 7.) Throughout this time, the parties engaged in settlement negotiations. (Pls.' 56.1 ¶¶ 64, 65, 69, 73, 76.)

On September 15, 2014, the arbitrator sent the parties an email that stated, "Having not heard from the parties in quite some time about this case, I am placing it in my inactive file and will consider it closed out shortly." (Turro Dec., Ex. 19; Pls.' 56.1 ¶ 74; Def.'s 56.1 ¶ 23.) Neither party responded. (Pls.' 56.1 ¶ 75.) Approximately nine months later on June 10, 2015, the plaintiffs emailed the arbitrator about placing the case back on her active calendar. (*Id.* at ¶ 84; Ruling at 7.) ESI orally moved to deny the request on June 18, (Pls.' 56.1 ¶ 92; Ruling at 8), and the arbitrator set a briefing schedule. (Pls.' 56.1 ¶ 95; Ruling at 8.) During briefing, the plaintiffs never argued that the arbitrator had exceeded her authority under the CBA by closing the case without a hearing. (Def.'s 56.1 ¶ 26.)

After receiving the letter briefs, the arbitrator granted ESI's motion on December 2, 2015. (Ruling at 14.) The arbitrator found that "there was definitely a failure on the part of the Union to proceed to and through arbitration. The Union did not pursue the issue to arbitration in a quick or appropriate manner. The Union should have proceeded with this grievance years ago." (*Id.* at 12.) While acknowledging that she did not formally notify the parties at the precise moment she closed the case, the arbitrator reasoned that the September 15, 2014 email put them on notice that the matter was going to be closed in the near future, yet the plaintiffs failed to respond to that email until June 10, 2015. (*Id.* at 13.) Consequently, the arbitrator found that "[t]his case was and has been closed." (*Id.*) She, therefore, denied the plaintiffs' request to place the case back on her active calendar. (*Id.* at 14.)

B. Procedural History

Following the arbitrator's ruling, the plaintiffs brought this action seeking vacatur on February 12, 2016. (ECF No. 1.) ESI filed its answer on March 28 along with a counterclaim seeking confirmation of the arbitration award. (ECF No. 12.) Having submitted declarations and exhibits, both parties now move for summary judgment. (ECF Nos. 14–19.)

II. STANDARD OF REVIEW

The standard for summary judgment is well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). The moving party bears the burden of showing that he is entitled to summary

3

judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). Furthermore, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)).

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (alteration and emphasis in original)). As the Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, (1986), "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249–50 (citations omitted). Indeed, "the mere existence of some alleged factual dispute between the parties alone will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W .R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

### III. DISCUSSION

Federal courts have jurisdiction over petitions brought to confirm labor arbitration awards under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998). The LMRA embodies a "federal policy of settling labor disputes by arbitration," and the Supreme Court has recognized that giving courts final say on the merits of arbitration awards would undermine this policy. *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987) (quoting *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 (1960)). It follows that "courts play only a limited role when asked to review the decision of an arbitrator." *Id.*; *see also Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) ("Judicial review of a labor-arbitration decision pursuant to such an agreement is very limited."); *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984) ("[T]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.").

Specifically, the court's role is to confirm the arbitration award if it "'draws its essence from the collective bargaining agreement' and is not the arbitrator's 'own brand of industrial justice.'" *First Nat. Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Employees Union Local 338, Affiliated with the Retail, Wholesale & Dep't Store Union, AFL-CIO*, 118 F.3d 892, 896 (2d Cir. 1997). An award satisfies this standard if the "arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Major League Baseball*, 532 U.S. at 509. As the Supreme Court has explained, "[c]ourts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Id.* Indeed, "serious error" and "improvident, even silly, factfinding do[ ] not provide a basis for a reviewing court to refuse to enforce the award." *Id.* (citations omitted).

Section 301 of the LMRA also empowers a district court to vacate an arbitration award. *See Kallen v. District 1199, National Union of Hospital and Health Care Employees, RWDSU,* 574 F.2d 723, 725 (2d Cir. 1978). The Second Circuit has consulted the Federal Arbitration Act's ("FAA") standards for vacatur to determine when vacatur is appropriate under the LMRA. *See, e.g.*, *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 545–46 (2d Cir. 2016) [hereinafter "*Brady*"]; *Bell Aerospace Co. Div. of Textron v. Local 516, Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW)*, 500 F.2d 921, 923 (2d Cir. 1974). Under section 10(a)(3) of the FAA, a court may vacate an award if "the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3). The Second Circuit has held that an award may be vacated under section 10(a)(3) of the FAA "only if fundamental fairness is violated." *Brady*, 820 F.3d at 546. Under section 10(a)(4) of the FAA, a party may obtain vacatur if "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4); *see, e.g.*, *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). The party seeking vacatur bears the burden of proof and "must clear a high hurdle" to prevail. *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 72 (2d Cir. 2012) (quoting *Stolt-Nielsen*, 559 U.S. at 671). Indeed, the Second Circuit has indicated that vacatur is warranted only in "exceptional" cases. *Brady*, 820 F.3d at 532.

Here, the plaintiffs argue that the arbitrator (1) deprived the plaintiffs of a fundamentally fair arbitration under section 10(a)(3) by failing to hold a hearing on the merits and (2) exceeded her powers under section 10(a)(4) by ignoring the clear and unambiguous terms of the parties' CBA. The Court finds neither argument persuasive.

### A. Fundamental Fairness

The plaintiffs argue that the arbitrator deprived them of fundamental fairness by rendering her decision without holding an evidentiary hearing. The Court disagrees.

The Second Circuit has "never held that the requirement of 'fundamental fairness' applies to arbitration awards under the LMRA." *Brady*, 820 F.3d at 546 n. 13. That issue remains open, *see id.*, but the Court need not resolve it here because, even assuming that the LMRA requires "fundamental fairness," the plaintiffs here have not satisfied their heavy burden to show that the arbitrator violated that requirement.

5

Under the FAA, an arbitrator "need not follow all the niceties observed by the federal courts," *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997) (quoting *Bell Aerospace*, 500 F.2d at 923), but she still "must give each of the parties to the dispute an adequate opportunity to present its evidence and argument." *Id.* (citing *Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De Tronquistas Local 901*, 763 F.2d 34, 39 (1st Cir. 1985)). In *International Union, United Mine Workers of America v. Marrowbone Development Co.*, 232 F.3d 383, 390 (4th Cir. 2000), for example, the Fourth Circuit concluded that the arbitrator deprived a union of a fundamentally fair hearing. There, the arbitrator held an abbreviated hearing where he accepted a handful of exhibits and heard the union's opening statement in which counsel indicated the union would present new evidence. *Id.* at 387. After the opening, the arbitrator granted an adjournment of the hearing requested by the employer for further negotiations between the parties and re-scheduled the evidentiary hearing for another date. *Id.* Before the date the new hearing was to occur, however, the arbitrator ruled on the merits in the employer's favor. *Id.* The Fourth Circuit concluded that doing so deprived the union of a full and fair hearing because "the arbitrator issued his award without ever holding [the new] hearing or affording the Union the opportunity to present the evidence it had been prepared to offer at the abbreviated hearing." *Id.*

Similarly, in *Kaplan v. Alfred Dunhill of London, Inc.*, No. 96 CIV. 0258 (JFK), 1996 WL 640901, at *5 (S.D.N.Y. Nov. 4, 1996), the court held that an arbitrator deprived a defendant of fundamental fairness where he ruled in the plaintiffs' favor on the merits without hearing evidence from the defendant. Although the court held a hearing at which only the plaintiffs appeared, the defendant notified the court the next day that it had not received notice of the hearing and requested that the arbitrator reopen the hearing. *Id.* at *3. The arbitrator declined to do so and instead ruled in the plaintiffs' favor on the merits. *Id.* at *4. The district court vacated the award and remanded for an evidentiary hearing, reasoning that "the arbitrator violated 9 U.S.C. § 10(a)(3) by refusing to hear evidence pertinent and material to the controversy." *Id.* at *7.

*Marrowbone* and *Kaplan* stand for the proposition that, where an arbitrator decides a case on the merits in favor of one party without providing the other party an effective opportunity to present evidence, the arbitrator violates section 10(a)(3)'s fundamental fairness requirement. *See also Hoteles*, 763 F.2d at 40 (holding that an arbitrator's complete refusal to consider evidence that "was both central and decisive to the Company's position" deprived the employer of a fundamentally fair hearing); *Tempo Shain*, 120 F.3d at 18 (holding that arbitrator's refusal to hear testimony from a key witness before deciding the case on the merits violated fundamental fairness); *Murphy Oil USA, Inc. v. United Steel Workers AFL-CIO Local 8363*, No. CIV.A.08-3899, 2009 WL 537222, at *3 (E.D. La. Mar. 4, 2009) (holding that arbitrator violated fundamental fairness by deciding case without hearing evidence).

On the other hand, where an arbitrator does provide a party with an opportunity to present evidence, and the party fails to take advantage of that opportunity, courts have held that a decision on the merits does not violate fundamental fairness. *Alexander Julian, Inc. v. Mimco, Inc.*, 29 F. App'x 700 (2d Cir. 2002) is instructive on this point. In *Alexander Julian*, an arbitration panel scheduled an evidentiary hearing, over the defendant's objection, on a date when the defendant's lawyer, Kenneth Schachter, was unavailable due to a prior commitment. *Id.* at

6

701. The defendant sent another lawyer to the hearing, but that lawyer left after the panel denied his request for an adjournment. *Id.* at 702. The panel later decided the case based solely on the evidence submitted by the plaintiffs. *Id.*

The Second Circuit held that it was not fundamentally unfair for the panel to decide the case without hearing evidence from the defendant. *Id.* at 703. It reasoned that the defendant "had ample notice of the arbitrators' decision to hold the arbitration on the appointed days and could have substituted counsel from Schachter's firm or chosen alternate representation." *Id.* In the alternative, Schachter could have attempted to reschedule his other commitment. *Id.* Yet, "[n]otwithstanding the availability of these options, Schachter chose not to appear at the arbitration hearing, without taking precautions against prejudicing the interests of his client." *Id.* The defendant, meanwhile, "had ample opportunity for representation at the hearing," but instead "[i]t chose to protest the arbitrators' decision by not putting on a defense." *Id.* The Second Circuit held that the defendant's "failure to proceed [did] not make the hearings fundamentally unfair." *Id.*; *see also Kober v. Kelly*, No. 06 CIV. 3341 (MGC), 2006 WL 1993248, at *3 (S.D.N.Y. July 18, 2006) (holding that an arbitrator did not deprive a party of fundamental fairness where the party was "afforded an opportunity for a hearing" but chose not to present evidence at that hearing).

This case resembles *Alexander Julian* more closely than *Marrowbone* or *Kaplan*. As noted, in *Marrowbone* and *Kaplan*, the arbitrators rendered their decisions without giving the losing party an *opportunity* to present evidence. *Marrowbone*, 232 F.3d at 390; *Kaplan*, 1996 WL 640901 at *7. Importantly, in both cases, the losing party never received adequate notice of the impending decision. On the contrary, in *Marrowbone*, when the arbitrator adjourned the hearing, he scheduled a new one where evidence would be presented, thus indicating to the parties that he would hear evidence before deciding the case on the merits. *See Marrowbone*, 232 F.3d at 390 ("Here, the arbitrator told the Union to meet with Marrowbone, gather information, negotiate further, and, if the dispute was still not resolved, present evidence and argument at a March 26 arbitration hearing."). Likewise, in *Kaplan*, the defendant submitted "substantial, undisputed evidence demonstrating that it did not receive notice of the hearing." *Kaplan*, 1996 WL 640901 at *7. In *Alexander Julian*, however, the defendant received "ample notice" of the hearing date and "ample opportunity for representation at the hearing" but chose not to take advantage of that opportunity. 29 F. App'x at 703.

Here, unlike in *Kaplan*, the plaintiffs do not dispute that they received the arbitrator's September 15 email. In addition, unlike in *Marrowbone*, the arbitrator did not render her decision before giving them notice of that decision by sending the email. Instead, like in *Alexander Julian*, she afforded the plaintiffs "ample notice," 29 F. App'x at 703, that she would "consider [the case] closed out shortly." Notwithstanding that explicit warning, the plaintiffs did not respond "shortly." Instead, they waited *nine months* before they requested that the case be placed back on the active docket. Although the arbitrator could have been more precise about exactly when she was closing the case, that imprecision does not render her decision fundamentally unfair. *See Tempo Shain*, 120 F.3d at 20 (holding that arbitrators "need not follow all the niceties observed by the federal courts" (quoting *Bell Aerospace*, 500 F.2d at 923)). The timeframe she gave for the closing of the case ("shortly") plainly did not cover the nine-month period the plaintiffs waited before contacting the arbitrator.

7

In short, the September 15 email placed the plaintiffs on notice of the arbitrator's impending decision to close the case, and that notice sufficed to satisfy the "fundamental fairness" requirement. Her decision to close the case without an evidentiary hearing, therefore, did not violate section 10(a)(3).

B. Contractual Language

The plaintiffs also argue that the arbitrator's award exceeded her powers under the contract. Specifically, they highlight paragraph 6 of the CBA, which provides that "the Arbitrator . . . *shall* conduct a hearing" in the event the parties cannot resolve their dispute through negotiation. Turro Dec., Ex. 5, ¶ 6 (emphasis added). They also point to another provision of paragraph 6, which states, "It is the intent of the parties hereto that all disputes between them, both within and outside this Agreement, shall be submitted to arbitration and that no technical defense to prevent the holding of the arbitration shall be permitted." *Id.* ESI counters that the plaintiffs waived both arguments by failing to raise them before the arbitrator when they moved to have the case placed back on the active docket. It further argues that the decision fell within the arbitrator's contractual powers. The Court agrees with ESI on both grounds.

1. Waiver

In *Brady*, the Second Circuit reaffirmed that a "party 'cannot remain silent, raising no objection during the course of the arbitration proceeding, and when an award adverse to him has been handed down complain of a situation of which he had knowledge from the first.'" 820 F.3d at 539 (quoting *York Research Corp. v. Landgarten,* 927 F.2d 119, 122 (2d Cir. 1991)). In *Cook Industries, Inc. v. C. Itoh & Company (America) Inc.*, 449 F.2d 106, 107–08 (2d Cir. 1971), for example, the Second Circuit held that a party waived an argument by failing to raise it before the arbitrator. There, the parties submitted a dispute to a panel of four arbitrators, one of whom may have had a business relationship with C. Itoh & Company (America) ("CIC"). *Id.* The panel ruled for CIC, and Cook Industries, Inc. moved to vacate, claiming for the first time in the district court that this arbitrator was partial. *Id.* The Second Circuit held that Cook waived this argument because the record showed that "[m]any of [Cook's] employees . . . knew of [the arbitrator's] dealings with [CIC]." *Id.* Therefore, Cook "was fully aware at the time of the submission to arbitration of the relationship between [CIC] and [the arbitrator]." *Id.* Its failure to raise the partiality argument before the panel thus constituted waiver of that argument. *Id.* at 108.

The plaintiffs admit that they never raised their contractual arguments before the arbitrator. They nevertheless contend that they did not waive these arguments because, at the time they asked the arbitrator to place the case back on the active docket, she had not yet exceeded her authority under the contract. According to the plaintiffs, her alleged *ultra vires* act occurred when she issued her ruling on December 2, 2015.

The Court disagrees. The plaintiffs allege that the arbitrator exceeded her authority by closing the case without holding a hearing. However, the arbitrator did not close the case on December 2, 2015, but over a year earlier, "shortly" after her email on September 15, 2014. Moreover, by the time the plaintiffs requested the case be placed back on the arbitrator's active calendar, they, like the appellants in *Cook*, were "fully aware" the arbitrator had closed the case without a hearing. 449 F.2d at 107. As this action was the basis for their contractual claims, they should have raised them, at the latest, before the arbitrator ruled on their motion to have

8

the case reactivated. Their failure to do so constitutes waiver. *See id.*; *Brady*, 820 F.3d at 539.

2. Contractual Powers

Even assuming the plaintiffs did not waive their contractual arguments, the Court concludes that they have failed to meet their high burden in showing that the arbitrator imposed her "own brand of industrial justice." *First Nat. Supermarkets*, 118 F.3d at 896.

As noted above, although a district court can vacate an award if "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made," 9 U.S.C. § 10(a)(4), the burden of proving such violations is high, *see Scandinavian Reinsurance*, 668 F.3d at 72, and vacatur is appropriate only in "exceptional" cases. *Brady*, 820 F.3d at 532. Moreover, a district court must confirm an arbitration award if it "draws its essence from the collective bargaining agreement." *First Nat. Supermarkets*, 118 F.3d at 896. As the Supreme Court has explained, this standard is satisfied if the "arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Major League Baseball*, 532 U.S. at 509. Importantly, the Second Circuit has held that "[i]nterpretation of . . . contract terms is within the province of the arbitrator," and courts may vacate an award only if the arbitrator "ignor[es] the clear meaning of contract terms." *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 25 (2d Cir. 1997).

In *Toroyan v. Barrett*, 495 F. Supp. 2d 346, 351 (S.D.N.Y. 2007), for example, the court upheld an arbitrator's reading of the contract even though one party, Patrick Barrett, asserted that the arbitrator "ignored the clear meaning of . . . [the] Agreement" and offered a competing interpretation. The court, however, concluded that the arbitrator's reading of the contract provided "a 'barely colorable justification' for the finding that no breach had occurred." *Id.* at 350 (quoting *Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004)). Barrett's interpretation, meanwhile, may have been "plausible," but it was "not sufficiently clear and explicit such that a refusal to apply it would" require vacatur. *Id.* at 351.

Similarly, in *Local 1199, Drug, Hospital and Health Care Employees Union, RWDSU, AFL-CIO v. Brooks Drug Co.*, 956 F.2d 22, 26 (2d Cir. 1992), the Second Circuit upheld an arbitrator's interpretation of a contract even though he arguably misconstrued it. Specifically, after discerning "ambiguity in the clause" in question, the court determined that both extrinsic evidence of the parties' intent and other provisions of the contract supported the arbitrator's interpretation. *Id.* This was sufficient to uphold the award. *Id.*

Like in *Toroyan* and *Brooks Drug Co.*, the contractual provisions at issue here contain some ambiguity. The first clause the plaintiffs cite, read in full, provides that the arbitrator "shall conduct a hearing in such manner as he shall consider proper." Turro Dec., Ex. 5, ¶ 6. The plaintiffs argue that the phrase "shall conduct a hearing" compels the arbitrator to hold an evidentiary hearing before issuing a decision. ESI, on the other hand, asserts that the phrase "in such manner as he shall consider proper" vests the arbitrator with complete discretion on the hearing procedure, citing the PERB's rules for support. Given that the plaintiffs never raised these contractual arguments before the arbitrator, the arbitrator did not formally adopt either interpretation, but her ruling is consistent with ESI's.

The court concludes that, like Barrett's interpretation of his contract in *Toroyan*, the plaintiffs' interpretation of the "shall conduct a hearing" clause "may at least be plausible, [but] it is not sufficiently clear and explicit such that a refusal to apply it would" require vacatur. 495 F. Supp. 2d at 351. The use of the phrase "in such manner as he shall consider proper" suggests that the clause does not confer an absolute right to an evidentiary hearing, but instead affords the arbitrator at least some discretion in determining how the arbitration shall proceed. The PERB's rules for arbitration proceedings reinforce this reading, providing, "The conduct of the arbitration proceeding shall be under the arbitrator's exclusive jurisdiction and control, subject to such rules of procedure as the parties may jointly agree upon." Declaration of Glenn B. Gruder, Ex. A, § 207.9; *see also Brooks Drug Co.*, 956 F.2d at 26 (confirming award where extrinsic evidence supported arbitrator's interpretation). Thus, there appears to at least be a "barely colorable justification" for the arbitrator's ruling under the first contested clause, *Toroyan*, 495 F. Supp. 2d at 350 (quoting *Wallace*, 378 F.3d at 190), and that justification is "supported at least in part by extrinsic evidence of the parties' intent." *Brooks Drug Co.*, 956 F.2d at 26.

Like the first clause, the second is also ambiguous. It provides that "no technical defense to prevent the holding of the arbitration shall be permitted." Turro Dec., Ex. 5, ¶ 6. Plaintiffs contend that this clause prevents the parties from utilizing a technical defense to prevent the holding of an evidentiary hearing. ESI, conversely, argues that it only reconfirms that the arbitrator, not the courts, shall decide the issues between the parties, and that the parties shall not raise technical defenses to a claim's arbitrability.

The plaintiffs' interpretation of this clause is plausible, but it is not so clear from the wording of the contract that deviance from it would warrant vacatur. *See Toroyan*, 495 F. Supp 2d at 351. In lieu of the word "hearing," the relevant clause uses the term "arbitration," which Black's Law Dictionary defines as "[a] dispute-resolution *process* in which the disputing parties choose one or more neutral third parties to make a final and binding decision resolving the dispute." (10th ed. 2014) (emphasis added). This "process" need not always include an evidentiary hearing, as arbitrators are empowered to decide cases on procedural grounds without such hearings. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("'[P]rocedural' questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide."); *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 394 (2d Cir. 2011) (noting that "gateway matters," like waiver, estoppel, and delay "are presumptively reserved for the arbitrator's resolution").

Furthermore, the first portion of the clause lends more credence to ESI's interpretation of the CBA. *See Brooks Drug. Co.*, 956 F.2d at 26 (confirming award where other provision of contract supported arbitrator's reading). Specifically, the clause initially provides that disputes between the parties "shall be submitted to *arbitration*" before indicating that "no technical defense to prevent the holding of the *arbitration* shall be permitted." Turro Dec., Ex. 5, ¶ 6 (emphasis added). If the plaintiffs' suggested equivocation of "arbitration" with "evidentiary hearing" were adopted, the first part of this clause would require disputes to "be submitted to [an evidentiary hearing]." The Court finds it unlikely that the parties would have agreed to such an interpretation over the alternative—the submission of disputes to a "process in which . . . neutral third parties . . . make a final and binding decision resolving the dispute." Black's Law

Dictionary, *Arbitration* (10th ed. 2014). It follows that, at the very least, in closing the case without a hearing, the arbitrator was "arguably . . . applying the contract and acting within the scope of his authority" under the "technical defenses" clause. *Major League Baseball*, 532 U.S. at 509; *see also Toroyan*, 495 F. Supp. 2d at 350–51.

Overall, the Court concludes that the arbitrator did not plainly exceed her authority under the contract, and therefore her decision is not one of those "exceptional" decisions in which she imposed her "own brand of industrial justice." *Brady*, 820 F.3d at 532, 537. Instead, the award "draws its essence from the collective bargaining agreement." *First Nat. Supermarkets*, 118 F.3d at 896. As such, the plaintiffs have failed to meet their burden in proving that vacatur is warranted under section 10(a)(4) of the FAA. *See Brady*, 820 F.3d at 532, 537; *Scandinavian Reinsurance*, 668 F.3d at 72.

\* \* \*

For the above reasons, the Court denies plaintiffs' request for vacatur of the award, and grants the defendant's motion for summary judgment, confirming the arbitrator's ruling that closed the case on the grounds of delay.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: November 22, 2016
    Central Islip, NY